NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNION UNDERWEAR COMPANY, INC. d/b/a FRUIT OF THE LOOM, and RUSSELL CORP., <br><br> Plaintiffs, <br><br> v. <br><br> GI APPAREL, INC. and ANTHONY PRISCO, <br><br> Defendants. | **OPINION** <br><br> Civ. A. No. 08-00124 (WHW) |

**Walls, Senior District Judge**

Plaintiffs Union Underwear Company, Inc., d/b/a Fruit of the Loom, and Russell Corp. (collectively, the "Plaintiffs") applied to this Court for an order to recognize and enforce a pre-judgement writ of attachment issued by the United States District Court for the Western District of Kentucky ("Kentucky District Court") against the real and personal property of Defendant GI Apparel, and against Defendant Anthony Prisco's interests in Prisco Properties, pursuant to Federal Rule of Civil Procedure 64 and the Full Faith and Credit clause. Defendants GI Apparel and Anthony Prisco (collectively, the "Defendants") have opposed this motion. Following a hearing on August 6, 2008, Plaintiffs' motion to domesticate the writ of attachment issued by the Kentucky District Court is granted.

NOT FOR PUBLICATION

## BACKGROUND

The Plaintiffs filed a complaint against the Defendants in the Western District of Kentucky to collect $1,413,676.38, plus interest, from the due date of unpaid invoices.  (Dkt. Entry No. 3, Certification of Rachel R. Carter, Esq. in Supp. of Pls.' Miscellaneous Application ("Carter Cert."), Complaint, Union Underwear Corp. v. GI Apparel, Inc., No. 08-0054 (W.D.K.Y. filed Apr. 4, 2008) ("Kentucky Compl.") at ¶¶ 1-5, 15-16.)

Plaintiff Fruit of the Loom is a corporation organized and incorporated in the State of Delaware with its principal place of business in Kentucky.  (Kentucky Compl. at ¶¶ 2-3.) Plaintiff Russell Corp. is a corporation organized and incorporated in the State of Delaware with its principal place of business in Alabama.  (Id. at ¶ 3.)  Defendant GI Apparel is a corporation organized and incorporated in the State of New Jersey, with its principal place of business in New Jersey.  (Id. at ¶ 4.)  Defendant Anthony Prisco ("Prisco") is an individual residing in New Jersey.  (Id. at ¶ 5.)

Plaintiffs are "industry leaders in the manufacture and sale of apparel items."  (Id. at ¶ 10.)  Defendant GI Apparel is engaged in the business of purchasing apparel items, imprinting them with "various designs" and reselling the apparel.  (Id. at ¶ 11.)  Defendant Prisco is the Chief Executive Officer, and a shareholder, of Defendant GI Apparel.  (Id.)

Plaintiffs entered into a "supply and credit arrangement[]" with Defendant GI Apparel to provide it with goods on credit.  (Id. at ¶ 12.)  On May 15, 2007, Defendant Prisco signed a Personal Guaranty to secure the payment of amounts due to Plaintiffs resulting from goods sold

NOT FOR PUBLICATION

to GI Apparel.  (Id. at ¶ 13; Carter Cert., Ex. A to the Complaint, Union Underwear Corp. v. GI Apparel, Inc., No. 08-0054 (W.D.K.Y. filed Apr. 4, 2008) ("Personal Guaranty").

Plaintiffs delivered goods to Defendant GI Apparel over a period of time.  (Kentucky Compl. at ¶ 14; Carter Cert., Ex. B to the Complaint, Union Underwear Corp. v. GI Apparel, Inc., No. 08-0054 (W.D.K.Y. filed Apr. 4, 2008) ("Fruit of the Loom Statement of Account"); Carter Cert., Ex. C to the Complaint, Union Underwear Corp. v. GI Apparel, Inc., No. 08-0054 (W.D.K.Y. filed Apr. 4, 2008) ("Russell Statement of Account").)  As of March 27, 2008, Defendant GI Apparel owed Plaintiffs $1,413,676.38,[1] plus interest.  (Kentucky Compl. at ¶¶ 15-16.)

On April 4, 2008, Plaintiffs initiated this action against Defendants in the Kentucky District Court to recover the amounts past due.  (Kentucky Compl. at ¶¶ 25-30.)  Plaintiffs filed a motion for an order of attachment, pursuant to Federal Rule of Civil Procedure 64 and Kentucky state law, of the assets of Defendant GI Apparel, and certain assets of Defendant Prisco.  (Carter Cert., Ex. C, Mot. for an Order of Attach. At 1-2 ("Mot. for Attach. Order.").)  On April 5, 2008, Defendants GI Apparel and Prisco were personally served with the complaint, demand for payment and motion for a writ of attachment against the assets of GI Apparel and certain assets of Prisco.  (Carter Cert., Ex. B, Demand; Mot. for Attach. Order; Carter Cert., Ex. D; Submission in Supp. of Pls.' Miscellaneous Application for an Order Domesticating a Foreign Writ of Attach. at 2. ("Misc. App. Supp.").)

---

[1] Defendant GI Apparel owes $792,817.98, plus interest, to Plaintiff Union Underwear Company and owes $620,858.40, plus interest, to Plaintiff Russell Corporation.  (Fruit of the Loom Statement of Account; Russell Statement of Account.)

NOT FOR PUBLICATION

Plaintiffs posted a bond of $3.5 million if they should fail to recover in their action. (Carter Cert., Ex. H, Bond.)  The Kentucky District Court was satisfied that Plaintiffs met the requirements under Kentucky law, and entered an order of attachment against all "real and personal property of Defendant GI Apparel" and all of "Defendant Anthony Prisco's interests in and ownership of Prisco Properties . . . and his interests in, and ownership of, any and all proceeds, profits, income, earnings or other benefits arising from . . . [his interests in Prisco Properties]."  (Carter Cert., Ex. I, Order of Attach. at 1-2.)

Plaintiffs now seek to domesticate this writ of attachment in the State of New Jersey. (Misc. App. Supp. at 5.)  Plaintiffs claim that the Kentucky District Court had personal and subject matter jurisdiction over Defendants, and that venue was proper.  (Id. at 5-6.)  Plaintiffs argue that Federal Rule of Civil Procedure 64 allows a party to apply the laws of the "state where the Federal Court is located," subject to any federal statutes that may govern.  (Id. at 6.)  Because no federal statute applied, Plaintiffs argue they have met the requirements for a writ of attachment under Kentucky law, and that the order of the Kentucky District Court was proper. (Id. at 5-6.)  Plaintiffs claim that the properly issued writ of attachment (the "Kentucky Writ") is enforceable in the State of New Jersey "according to the laws of the issuing court," and under the principles of the Full Faith and Credit clause.  (Id. at 8-9.)

Defendants have filed a memorandum with this Court opposing Plaintiffs' request to domesticate this pre-judgment attachment.   (Dkt. Entry No. 6, Letter Mem. Objecting to Miscellaneous Application for an Order Domesticating Foreign Writ of Attach. at 1-2 ("Def. Ltr. Mem."), filed May 16, 2008.)  Defendants argue that a pre-judgment foreign writ of attachment is

**NOT FOR PUBLICATION**

not entitled to the same credit as a foreign judgment. (Id. at 2-5.) Defendants argue that Plaintiffs should have followed the substantive and procedural laws of the State of New Jersey to determine if a writ of attachment should be granted in this State. (Id.) Further, Defendants claim that Plaintiffs are subordinate to its other creditors. (Id. at 2-3.) Defendants also argue that scope of the Plaintiffs' proposed order is overly broad because it seeks to attach Defendant Prisco's real and personal property, which is more than the Kentucky Writ allows. (Id. at 8-9.)

In response, Plaintiffs argue that Kentucky law applies rather than New Jersey law because Defendant Prisco signed the Personal Guaranty, which included a forum-selection clause that either Kentucky or Georgia law would govern any disputes over the sale or shipment of goods. (Dkt. Entry No. 7, Union Letter at 2-3.) Plaintiffs further argue that Defendant Prisco may have violated the Personal Guaranty by giving a mortgage to CIT Group several months after the agreement. (Id. at 6 n.1.) The Personal Guaranty prohibited Defendant Prisco from "encumbering his interest in Prisco Properties" and diminished the value of his interest in the property, which reduces the value to Plaintiffs. (Id.)

Further, Plaintiffs argue that properly issued pre-judgment attachments are "entitled to Full Faith and Credit" in foreign jurisdictions. (Id. at 3-4.) Plaintiffs also assert that the priority of non-party creditors is not at issue in this action, and should not prevent this Court from giving "Full Faith and Credit" to the Kentucky Writ. (Id. at 4-5.) Plaintiffs modified its proposed order to address Defendants' contention that it was overbroad and it now reflects the language in the Kentucky Writ. (Id. at 5.)

**NOT FOR PUBLICATION**

Plaintiffs contend that Defendants fraudulently transferred the assets of Defendant GI Apparel to certain individuals and creditors with the intent to defraud Plaintiffs. (Kentucky Compl. at ¶¶ 33-38.) Plaintiffs claim that if this Court does not recognize the Kentucky Writ, they will be injured because they will be unaware of any efforts by the Defendants to "dispose of the real property," and may not be able to recover any money at all. (Union Letter. at 6.)

## STANDARD OF REVIEW

Article IV, section 1 of the Constitution states that, "[f]ull faith and credit shall be given in each State to the public Acts, Records and Judicial Proceedings of every other State . . . Congress may, by general Laws, prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." 28 U.S.C. section 1738 also provides in relevant part that:

> "[t]he records and judicial proceedings of any court in any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories or Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.
>
> Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same Full Faith and Credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

28 U.S.C.A. § 1738 (2006).

NOT FOR PUBLICATION

## DISCUSSION

**A. State Law Governs the Availability of Attachment Remedies**

Rule 64 of the Federal Rules of Civil Procedure requires a federal court to apply the laws of the state in which it sits in determining whether an attachment of property is appropriate, "whether or not removed from state court." Granny Goose Foods v. Bhd. of Teamsters, Local No. 70, 415 U.S. 423, 436, n.10 (1974); see also Marsellis-Warner Corp. v. Rabens, 51 F. Supp. 2d 508, 536 (D.N.J. 1999) ("State law governs an application for a writ of attachment."); Ashland Oil, Inc. v. Gleave, 540 F. Supp. 81, 82-83 (W.D.N.Y. 1982) (stating that "attachment of property . . . is subject to the law of the state in which the district court is held.");Prozel & Steigman, Inc. v. Int'l Fruit Distrib., 171 F. Supp. 196, 199 (D.N.J. 1959) (stating that attachment remedies removed from state court are governed by state law). Federal Rule of Civil Procedure 64 provides in relevant part:

> "[a]t the commencement of and during the course of an action, all remedies providing for seizure of . . . property for the purpose of securing satisfaction of the judgment ultimately to be entering the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held [subject to applicable federal law]. . . remedies thus available include . . . attachment . . . ."

Fed. R. Civ. P. 64.

In spite of Rule 64, Defendants argue that Plaintiffs must follow the substantive and procedural laws of New Jersey, not Kentucky, to obtain a writ of attachment for Defendants' property located within New Jersey. Defendants claim that the Kentucky District Court cannot issue an attachment order on property outside Kentucky's borders, and that the Kentucky Writ should not be recognized or enforced by this Court.

```
```
```
```

**NOT FOR PUBLICATION**

Defendants support their argument with a 4-3 decision by the Supreme Court of Kentucky in Union Underwear Co. v. Barnhart, 50 S.W.3d 188 (Ky. 2001).  The Union Underwear majority held that "the Kentucky Civil Rights Act does not have extraterritorial application."  Id. at 193.  In arriving at this finding, the majority reasoned that

> our analysis [begins] with the well-established presumption against extraterritorial operation of statutes.  That is, unless a contrary intent appears within the language of the statute, we presume that the statute is meant to apply only with the territorial boundaries of the Commonwealth.  This rule of construction helps to protect against unintended clashes of the laws of the Commonwealth with the laws of our sister states.

Id. at 190 (citations omitted).  The majority contrasted the Kentucky's Workers' Compensation Act, which expressively provided for extraterritorial application, with the Kentucky Civil Rights Act, which did not expressively provide for extraterritorial application.  Id. at 190-91.  The Kentucky Supreme Court explained that it "will not infer the extraterritorial reach of the [Kentucky Civil Rights Act] absent a positive showing by [plaintiff] that the General Assembly intended that the Act be applied extraterritorially."  Id. at 191 (emphasis added).

While Defendants failed to raise properly this argument in the Kentucky District Court, as pointed out by Plaintiffs, this Court disagrees with Defendants' interpretation of KRS section 425.301, Kentucky's statute on "grounds for attachment in action for recovery of money," in light of Union Underwear Co. v. Barnhart.  In this day and age, where diverse parties enter into contracts, own interests in real and personal property located in multiple states, and agree on choice of law and choice of forum clauses, a state's statute on attachment may be rendered toothless if a defendant simply moves his property to another state.  While there is a presumption

**NOT FOR PUBLICATION**

against extraterritorial operation of state statutes under Kentucky law, that presumption is dispelled by the language in KRS section 425.301.

It is clear from the language of KRS section 425.301 that extraterritorial application is appropriate if a plaintiff followed procedures for attaching a defendant's property as required by KRS section 425.301. KRS section 425.301 provides in relevant part:

> The plaintiff may, at or after the commencement of an action, have an attachment against the property of the defendant, including garnishees, as a security for the satisfaction of such judgment as may be recovered:
>
> (1) In an action for the recovery of money against:
>
> (a) A <u>defendant who is a foreign corporation or nonresident of the state</u>; or
>
> * * *
>
> (f) Is about to remove, or has removed, his property, or a material part thereof, <u>out of this state</u>, not leaving enough therein to satisfy the plaintiff's claim of said defendant's creditors; or
>
> * * *
>
> (2) In an action for the recovery of money due upon a contract, judgment or award, <u>if the defendant have no property in this state subject to execution</u>, or not enough thereof to satisfy the plaintiff's demand, and the collection of the demand will be endangered by delay in obtaining judgment or a return of no property found.

Ky. Rev. Stat. Ann. § 425.301 (emphasis added). In other words, a plaintiff may have an attachment of defendant's property in an action for money under a contract if the defendant removed property out of the state or does not have property within the state.

A foreign defendant with property outside the state is not without protection. KRS section 425.301(3) provides a safeguard for defendants because it requires that "[b]efore an order

**NOT FOR PUBLICATION**

of attachment shall issue prior to judgment, the person seeking the order must first make a demand in writing . . . deliver such demand and a copy of the complaint, motion and summons to the debtor . . . at least seven (7) days and not more than sixty (60) days before such order is sougt. . . ." Ky. Rev. Stat. Ann. § 425.301(3).

There is limited precedent from Kentucky regarding its attachment statute. However, in PNC Bank v. Person, after discussing largely procedural and due process issues, that district court found that attaching the property of a nonresident was appropriate, so long as the plaintiff had adhered to the statutory requirements and the defendant had been afforded due process. PNC Bank v. Person, No. 06-292-C, 2006 U.S. Dist. LEXIS 79088, at *4-11 (W.D.K.Y. Oct. 27, 2006). That court reasonably concluded that the Kentucky state legislature intended for injured plaintiffs to be able to seek security for their judgments against nonresident defendants who have subjected themselves to the jurisdiction of the court.[2]

Defendants further argue that other federal district courts have restricted the attachment statutes to their territorial boundaries in the states where they sit. In GM Gold & Diamonds, LP v. Febrege Co., the District Court in the Southern District of Texas denied the plaintiff's motion for a writ of attachment against the defendant's New York property because the Texas statute did not address the "issue of extraterritoriality." 489 F. Supp. 2d 725, 728-29 (S.D. Tex. 2007). That district court stated that the Texas legislature did not intend for the attachment statute to

---

[2] While the Defendants do not assert any challenges to the Kentucky District Court's exercise of personal or subject matter jurisdiction over them, it would be unlikely that any such challenges would succeed given the extensive contacts in Kentucky, Defendant Prisco's signing of the Personal Guaranty, and that the amount-in-controversy is $1.4 million and there is complete diversity between the parties.

**NOT FOR PUBLICATION**

apply beyond its borders, and the court held that a Texas federal court was bound by the intent of the legislature. Id. at 729. Additionally, the Defendants point to Fed. Deposit Ins. Co. v. Rodenberg, in which the District Court in the District of Maryland denied the plaintiff's motion for a pre-judgment writ of attachment because it found that while there was no explicit discussion of territorial limits on the remedy of attachment, that it was "safe to assume" that the statute was limited to within the state. 622 F. Supp. 286, 288 (D. Md. 1985).

Additionally, Defendants cite to Temp. Services Ins. Ltd. v. O'Donnell, in which the District Court in the Middle District of Florida denied the plaintiff's request for a preliminary injunction because it determined that the plaintiff was actually asking for a writ of attachment but had not taken the necessary procedural steps to obtain one. No. 6:07-cv-1507-Orl-28GJK, 2008 WL 516717, at *7 (M.D. Fla. Feb. 22, 2008). Defendants argue that this opinion illustrates the need for Plaintiffs to follow the procedural requirements set forth under New Jersey law.

Defendants also advance New Jersey cases to show that New Jersey courts have refused to issue attachments against nonresidents. However, the Defendants' cases miss the point. In Lunger v. Page, 2 A.2d 606, 607 (Somerset County Ct. 1938), the lower court held that the assets of a nonresident executor of an estate cannot be attached to settle disputes between an individual and the estate of a decedent. This is factually distinct from the present action because the Lunger plaintiff was seeking to attach the assets of an individual who was not indebted to the plaintiff. Id.

In Johnson v. Wood, 189 A. 613, 620 (Hudson County Ct. 1936), the lower court quashed an already-issued writ of attachment and dismissed ongoing attachment proceedings against the

-11-

NOT FOR PUBLICATION

defendant. Defendants argue that the court's finding that "[a]n attachment upon shares of stock is ineffective unless the holder be enjoined from transferring the certificate by a court having jurisdiction over him." Id. at 617. It is not clear how this supports Defendants' argument, which seems to state, indirectly, that Plaintiffs cannot prevent Defendants from transferring or selling its interests in Prisco Properties because the Kentucky District Court did not have the jurisdiction to issue the writ of attachment. However, neither Defendant GI Apparel or Prisco challenged the personal jurisdiction of the Kentucky District Court.[3] Additionally, the Kentucky District Court properly had subject matter jurisdiction over the action because of the diversity of the parties and the amount-in-controversy.

Further, Defendants refer to a New York Court of Appeals case, Nat'l Broadway Bank v. Sampson, 179 N.Y. 213, 222 (N.Y. 1904), "[n]o state can subject to its laws either real or personal property which is out of its jurisdiction" to support their claim that the Kentucky District Court's order of attachment cannot be enforced in New Jersey. However, read in context, this quote reflects that court's opinion that a court cannot attach property when there is no jurisdiction over the property itself, the intangible right or interest at issue. Id. at 221-24. In the Kentucky action, the Kentucky District Court validly has jurisdiction over the interest at issue, pursuant to KSR section 425.301, which provides a remedy for parties who were injured in a contract dispute in the State of Kentucky.

---

[3] While the Defendants waived their right to challenge the personal jurisdiction of the Kentucky District Court, it is unlikely that such an attack would have succeeded given their extensive contacts with Kentucky, and Defendant Prisco's signing of the Personal Guaranty.

NOT FOR PUBLICATION

Defendants argue that these cases indicate that the remedy of attachment is limited to the borders of the state in which the rendering court sits.  However, Defendants' cases instead support the argument that whether a state's attachment statute applies beyond its borders is an individual inquiry into the controlling state's laws and precedent.  That Texas and Maryland courts interpret state laws as limiting the remedy of attachment to the territorial limits of the state,[4] does not mean that Kentucky courts have done the same.  To reiterate, this Court finds that the language of KSR section 425.301 indicates that Kentucky's attachment statute may apply extraterritorially if the person seeking an attachment satisfies the procedural requirements of KSR section 425.301.  As such, the Kentucky District Court has found that Plaintiffs are entitled to a prejudgment attachment order and issued the Kentucky Writ accordingly.

### B. Full Faith and Credit

Plaintiffs argue that because the Kentucky Writ was properly issued by the Kentucky District Court, it is entitled to Full Faith and Credit by this Court under Sanders v. Armour Fertilizer Works, 292 U.S. 190, 199-200 (1934).  In Sanders, the Supreme Court held that a party who had properly obtained a garnishment against another in the State of Illinois, could not have that judgment invalidated in Texas federal court when he had not willingly subjected himself to the jurisdiction of Texas.  Id. at 200-01.

Defendants interpret Federal Rule of Civil Procedure 64 to limit the remedies available for seizure of person or property to those available in the state in which the district court is

---

[4] See GM Gold & Diamonds, 489 F. Supp. 2d at 729; Fed. Deposit Ins. Co., 622 F. Supp. 2d at 288.

**NOT FOR PUBLICATION**

located, and cannot be applied to persons or property outside of the state.  However, Defendants do not offer any cases that support this interpretation of Rule 64.

The Third Circuit has found that "[a]voiding conflicting rulings from state and federal courts is a matter of public importance because of . . . issues of constitutional law and federalism . . . namely, the importance to our federal system that federal and state courts alike recognize judgments of other courts rendered with proper jurisdiction." Kittle v. Kittle, 197 Fed. Appx. 107, 111 (3d Cir. 2006).  In addition, a court in this district has found that 28 U.S.C. section 1738 applies to federal courts.  Pony Express Records, Inc. v. Springsteen, 163 F. Supp. 2d 465, 471-72, 472 n.2 (D. N.J. 2001) (specifically addressing the recognition of a foreign country's judgments) (citing Allen v. McCurry, 449 U.S. 90, 96 (1980).).

In Semtek Int'l Inc. v. Lockheed Martin Corp., the Supreme Court ruled that "federal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity." 531 U.S. 497, 508 (2001).  In federal diversity cases, courts must apply the law of the State in which it sits, so long as it does not conflict with federal law or interests, to avoid forum shopping and inequitable results.  Id. at 508-09.  The Eleventh Circuit has ruled that in recognizing foreign judgments, "an enforcing court should apply the law of the state courts in the state where the rendering federal court sits," unless there is a conflict with federal law.  Palmer & Cay, Inc. v. Marsh & McLennan Companies, Inc., 404 F.3d 1297, 1310 (11th Cir. 2005) (citing Semtek, 531 U.S. at 509.) (emphasis added).  Similarly, the Tenth Circuit has argued that the Full Faith and Credit clause, federal statutes and federal common law are so intertwined that both federal and state courts "must give effect to valid judgments" issued by other courts.  Employers

NOT FOR PUBLICATION

Reinsurance Corp. v. Mid-Continent Casualty Co., 358 F.3d 757, 765 (10th Cir. 2004) (emphasis added) (citing 18 Moore's Federal Practice § 130.01 (Matthew Bender 3d ed.)); see also Davis v. Davis, 305 U.S. 32, 40 (1938) (stating that 28 U.S.C. section 687, the predecessor to 29 U.S.C. section 1738, extended the rule of the Full Faith and Credit clause to all courts, state and federal.); Semler v. Psychiatric Inst. of Wash., D.C., 575 F.2d 922, 927-28 (D.C. Cir. 1978) (arguing that a "federal court exercising diversity jurisdiction in forum II" must give Full Faith and Credit to a judgment issued by a "federal court exercising diversity jurisdiction in forum I, *at least* in the absence of an overriding federal interest.").

The Third Circuit has stated that federal courts have a choice to apply Full Faith and Credit to decisions of other federal courts or apply the laws of the state in which it sits. Williams v. Ocean Transport Lines, Inc., 425 F.2d 1183, 1188-90 (3d Cir. 1970). The Third Circuit also explained that "[a] judgment rendered by a federal court is entitled to the same faith and credit as one rendered by the court of the state where it is sitting." Caterpillar Tractor Co. v. Int'l Harvestor Co., 120 F.2d 82, 85 (3d Cir. 1941). While acknowledging that the Full Faith and Credit clause applies only to the states, the Third Circuit found that federal courts are "of the same sovereignty," and as a result, the judgment of one federal court should be recognized by another. Id. at 85-87.

New Jersey state courts have afforded Full Faith and Credit to foreign state judgments where the issuing court properly had personal jurisdiction, subject matter jurisdiction and provided "adequate notice and an opportunity to be heard." City of Phila v. Stadler, 395 A.2d 1300, 1303 (Burlington County Ct. 1978). Additionally, New Jersey courts have held that the

**NOT FOR PUBLICATION**

interpretation of a foreign statute by a court of that state will be "accept[ed] as controlling." Id. at 1305 (citing King v. Klemp, 57 A.2d 530, 533 (N.J. Ch. 1947).). The Stadler court held that it is only under very narrow circumstances in which the enforcing state will disregard the judgment of an issuing state, and that "it has been said" that there is no such exception in situations regarding money damages in a civil action. 395 A.2d at 1305.

Based upon the Third Circuit's rulings, this Court has the discretion to recognize the prejudgment attachment order of the Kentucky District Court. See Williams, 425 F.2d at 1188-90; Caterpillar Tractor Co., 120 F.2d at 85-87. In considering whether to recognize and enforce the Kentucky District Court's order of attachment, this Court considered the Defendants' opportunity to respond, the intention of the parties to contract, and the potential for forum shopping if the plaintiff's motion is denied. See generally Semtek, 531 U.S. at 508-09 (stating that there should be national uniformity in federal diversity cases regarding claim-preclusion rules to prevent forum shopping); Connecticut v. Doehr, 501 U.S. 1, 18 (1991) (holding that Connecticut's attachment statute failed to provide due process to defendants because it did not generally allow for opportunities to contest an attachment); Jonnet v. Dollar Savings Bank, 530 F.2d 1123, 1129-30 (3d Cir. 1976) (holding Pennsylvania's attachment statute unconstitutional because it failed to provide the defendant with adequate safeguards against deprivation of property, such as notice or an opportunity to be heard).

While there is a preference for litigating a matter on its merits, Defendants had an opportunity to respond to the complaint, summons and motion for an order of attachment. While seven days is the minimum amount of time required under Kentucky law, Plaintiffs followed the

**NOT FOR PUBLICATION**

statutory procedures and Defendants were personally served with the documents. Seven days is an adequate amount of time to alert one's attorney and contest a pending attachment if, as Defendants argue, the attachment should not be recognized beyond Kentucky's borders.

Further, Defendant Prisco signed the Personal Guaranty to use his interest in Prisco Properties as collateral for Defendant GI Apparel's debts. In doing so, he was or should have been aware of the forum selection clause. By solely challenging the order of attachment once Plaintiffs attempted to enforce the Kentucky Writ in New Jersey, the Defendants are attempting to circumvent the Kentucky District Court and require the Plaintiffs to restart the litigation process, which is inequitable and clearly contrary to the forum-selection clause in the Personal Guaranty.

The remedy of attachment is intended to provide security to a plaintiff seeking to recover and collect judgment against a defendant. 13 Martin H. Redish, Moore's Federal Practice § 64.13 [2][b] (3d ed. 2008). Without such remedies, a "deserving litigant may lose the opportunity to recover damages . . . because an opponent will have dissipated or absconded with his or her resources or property." Id. at [2]. Plaintiffs have been injured by Defendants' failure to pay its invoices. Defendants are trying to make it more difficult for the Plaintiffs to collect debts owed to it.

The order of attachment issued by the Kentucky District Court will be recognized by this Court. Defendants have failed to show constitutional or procedural grounds for denying enforcement of the order of attachment. The laws of the state where the judgment was rendered govern the remedy of attachment. It is a reasonable interpretation that Kentucky's attachment

**NOT FOR PUBLICATION**

statute may apply extraterritorially. Lastly, forum shopping would be encouraged if Plaintiffs'

motion is denied.

## CONCLUSION

Plaintiffs' motion to domesticate the writ of attachment issued by the Kentucky District

Court is granted.

August 12, 2008                **s/William H. Walls**
                                          United States Senior District Judge

Appearances

Thomas R. Curtin
Graham & Curtin, P.A.
4 Headquarters Plaza, P.O. Box 1991
Morristown, New Jersey 07962

  Attorney for Plaintiffs

David J. Sprong
Brian Bailey
Becker Meisel LLC
Eisenhower Plaza II
354 Eisenhower Parkway
Suite 2800
Livingston, NJ 07039

  Attorneys for Defendant GI Apparel Inc. and Prisco Properties LLC